# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

WILLIAM GEE,

    Plaintiff,

v.

HANNIE HENDROFFE, *et al.*,

    Defendants.

Case No. 13-cv-1582-JCM-NJK

**ORDER**

Presently before the court is Magistrate Judge Nancy Koppe's report and recommendation. (Doc. # 54). The magistrate recommends the following: (1) that respondent's motion to dismiss (doc. # 29) be denied; (2) petitioner's petition for return of children (doc. # 1) be granted; and (3) petitioner's motion for a warrant in lieu of habeas corpus (doc. # 2) be granted. Respondent has filed timely objections to the magistrate's report and recommendation. (Doc. # 55).

**I.  Background**

    *A.  Factual*

William Gee ("Gee" or "petitioner") and Hannie Hendroffe ("Hendroffe" or "respondent") were married in South Africa in 2002. (Doc. # 27, at 1). The couple have two children together, "J.G." and "S.G." (hereinafter collectively referred to as "the children.").

1   In January 2013, the couple was divorced in Clark County, Nevada. (Doc. # 27, at 1). As
2   part of the custody agreement, the parties stipulated to move to South Africa with the children. (Doc.
3   # 32, at 17). The parties further agreed that respondent could relocate to Australia by December
4   2017, or when petitioner relocated from South Africa, whichever occurred first. (*Id.*).
5   On or around July 11, 2013, respondent left South Africa for Las Vegas, taking the children
6   with her. (Doc. # 27, at 2). She neither informed petitioner of her intention to take the children, nor
7   obtained his consent prior to her departure. Later that same day, respondent emailed petitioner
8   informing him that she was on her way to the United States, and that she planned on returning with
9   the children around August 9, 2013. (Doc. # 21, at 15).
10   Shortly after arriving in Las Vegas, respondent filed a motion in Nevada family court
11   requesting that the parties' parenting agreement be set aside and requesting permission to return to
12   the United States with the children. (Doc. # 27 at 2). Petitioner filed an opposition and
13   countermotion requesting that the children be returned to South Africa. (*Id.*). On August 14, 2013,
14   that court denied both parties' motions, finding that it did not have jurisdiction because the children
15   had been living in South Africa. (*Id.*).
16   According to respondent, on August 27, 2013, she left Las Vegas with the children and her
17   friend/babysitter, Yasmine Acevado, for southern California. (Doc. # 55). Respondent asserts that
18   she returned to Las Vegas to attend to legal matters on August 30, 2013, but left the children in
19   California with Ms. Acevado for the day. (*Id.*).
20   On August 30, 2013, Gee filed a petition in this court pursuant to the Hague Convention,
21   demanding that the children be returned to South Africa. (Doc. # 1). On August 31, 2013,
22   Hendroffe and the children left the United States for Kuala Lumpur, flying out of Los Angeles,
23   California.[1]

---

[1]   The petition and motion for warrant were not served until September 2, 2014. (Doc. # 11). The
documents were delivered to Ms. Acevado's home in Las Vegas, and respondent was not aware of
either the motions or the hearing scheduled for September 4, 2013, until she was contacted by

2

B.      *Procedural* [2]

After the petition and motion for warrant were filed, the magistrate promptly set a hearing on the matter for September 4, 2013. (Doc. # 10). Although the magistrate's order required respondent to be present at the hearing, respondent was never personally served with notice of such. After receiving notification of the hearing from petitioner's counsel, respondent contacted the court via telephone and indicated that she was no longer present in the United States. (Doc. # 15). In an effort not to delay the hearing, the magistrate allowed respondent to appear telephonically. *Id*.

At that hearing, the magistrate *sua sponte* raised the issue of whether the court had subject matter jurisdiction over this litigation, and ultimately continued the hearing to September 6, 2013. (*See* doc. # 17). The magistrate also ruled at that time that respondent could not be represented by her Australian counsel, Mr. Michael Paul, in this matter because he was not admitted to practice law in the United States. *Id*.

At the September 6, 2013, hearing, the magistrate ordered petitioner to brief the jurisdictional issue no later than September 13, 2013; respondent to respond no later than September 20, 2013; and petitioner to reply no later than September 25, 2013. (Doc. # 25). The magistrate then set an evidentiary hearing concerning jurisdiction for October 8, 2013, and ordered all parties, including the children, present and in person at the hearing. *Id*. Although respondent was already in Malaysia, she indicated that she understood this requirement. *Id*.

On September 23, 2013, the magistrate determined that the court had subject matter jurisdiction and that a hearing on jurisdiction was no longer necessary. (Doc. # 31). Accordingly,

---

petitioner's counsel via e-mail the day of the hearing–several days after she had already left the United States.

[2]   The parties do not appear to object to the magistrate's recitation of the procedural history. Accordingly, the court adopts it as set forth in the report and recommendation. (*See* doc. # 54, p. 5-7).

3

the magistrate ordered that the October 8, 2013, evidentiary hearing would instead concern the petition for judicial review and motion for warrant. (*Id.*).  The magistrate further ordered that petitioner, respondent, and their two children must be present, in person, at the aforementioned hearing, and that there would be no exceptions to the personal appearance requirement. *Id*.

On September 30, 2013, respondent filed a motion to appear telephonically, indicating that she was unable to appear in person and that the children were not mature enough to be present in court. (Doc. # 33).  The court denied that request and again ordered petitioner, respondent, and their two children to be present in person at the October 8, 2013, hearing. (Doc. # 36).  Respondent further asserted that she could not afford an attorney in Nevada. (Doc. # 33). Accordingly, the magistrate appointed the federal public defender's office to represent her. (Doc. # 36).

On October 1, 2013, attorney Shari Kaufman made an appearance on behalf of respondent. (Doc. # 37).  On October 3, 2013, and again on October 7, 2013, respondent's attorney filed motions seeking to delay the evidentiary hearing. (Doc. ## 42, 47).  The magistrate denied both requests. (Doc. ## 46, 48).

On October 8, 2013, the magistrate held the evidentiary hearing as scheduled. (Doc. # 49). Present at the hearing were petitioner, petitioner's counsel, and respondent's counsel. *Id*. Respondent and the children, in violation of the magistrate's order, did not attend the hearing. *Id*.

At the hearing, respondent's counsel raised the issue of whether the court had personal jurisdiction over respondent and requested that the magistrate postpone the hearing until the personal jurisdiction issue was resolved. *Id*.  The magistrate instructed the parties that they could submit briefing on the personal jurisdiction issue no later than October 18, 2013, and that the hearing would continue as scheduled. *Id*.

Petitioner's counsel then called the petitioner to testify under oath. *Id*.  Petitioner was asked questions by his counsel, then respondent's counsel cross-examined him and, finally, the magistrate asked petitioner questions of her own. *Id*.  No other witnesses were presented. *Id*.

4

1    At the close of the hearing, petitioner's counsel requested that the court freeze all of respondent's
2    assets in the United States and, additionally, issue a warrant for her arrest. *Id*. The magistrate
3    instructed respondent's counsel that he could file briefing for that request. *Id*. The parties made their
4    closing arguments and the court took the matter under submission. *Id*.
5         On October 9, 2013, petitioner filed a memorandum requesting that the court freeze all of
6    respondent's assets in the United States and, additionally, issue a warrant for her arrest. (Doc. # 50).
7    The magistrate issued a minute order instructing petitioner that the request was not
8    submitted in the proper form and did not apply the appropriate standards. (Doc. # 51). Petitioner did
9    not resubmit his request.
10        On October 29, 2013, the magistrate issued a report recommending the petition be granted, a
11   warrant in lieu of habeas corpus be issued, and respondent's motion to dismiss be denied. (Doc. #
12   54). Respondent filed objections to the report and recommendation, specifically objecting to the
13   magistrate's findings that the court has personal and subject matter jurisdiction. (Doc. # 55).
14   Petitioner did not file a response.
15   **II.   Legal Standard**
16        The court "may accept, reject, or modify, in whole or in part, the findings or
17   recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). Where a party timely objects to a
18   magistrate judge's report and recommendation, then the court is required to "make a de novo
19   determination of those portions of the [report and recommendation] to which objection is made." 28
20   U.S.C. § 636(b)(1). Because respondent has timely objected to all of the magistrate's findings, the
21   court conducts a de novo review of the entire report.
22   **III.  Discussion**
23        The threshold issue is whether the court has subject matter jurisdiction over this matter under
24   the Hague Convention. "The Hague Convention is a multilateral international treaty on parental
25   kidnapping." *Holder v. Holder*, 305 F.3d 854, 859 (9th Cir.2002). The convention was adopted in
26   1980 "to protect children internationally from the harmful effects of their wrongful removal or

retention and to establish procedures to ensure their prompt return to the State of their habitual residence." (*See* Hague Convention, preamble).  The International Child Abduction Remedies Act ("ICARA"), which implements the convention in the United States, provides that state courts and United States district courts have concurrent original jurisdiction over actions arising under the convention.  *See* 42 U.S.C. § 11603(a).

Any person seeking the return of a child in the United States may commence a civil action under the convention by "filing a petition in . . . any court which has jurisdiction of such action and which is authorized to exercise its jurisdiction *in the place where the child is located at the time the petition is filed*."  42 U.S.C. § 11603(b) (emphasis added).

In any judicial proceeding, the burden of proving jurisdiction rests upon the party asserting it.  Here, petitioner is required to demonstrate that this court has jurisdiction by proving the children were located in this district at the time he filed the petition.  He has failed to do so.

The parties' disagreement regarding subject matter jurisdiction centers around the word "located" as it is used within the context of an ICARA petition.  Relying on a footnote in *Holder*, the petitioner argues that the place where the children are discovered, apparently whether or not they are physically there when the petition is filed, is the determinative location.  Because the children were "discovered" in Las Vegas, petitioner asserts that this court has jurisdiction.

In finding that the court does have subject matter jurisdiction, the magistrate concluded that respondent's contention that the children were in California with Ms. Acevado when the petition was filed was irrelevant because petitioner did not have knowledge of that trip, and his reasonable belief that the children were in Las Vegas was enough to establish jurisdiction.  (Doc. # 54 at 8).  Neither the plain language of the statute nor the decisions relied on by petitioner support that conclusion.

In *Holder*, the petitioner and respondent had gotten married in California and were living in Germany.  Respondent left Germany with the couple's children and moved to the state of Washington.  Although the holding in that case was primarily focused on *res judicata*, the court touched on the meaning of the word "located" in passing.  In doing so, the court stated that:

6

> [Petitioner] probably *could not have* brought his Hague Convention petition in California in the first instance because California probably *does not have jurisdiction to hear it* . . . At least one of our sister circuits has held that "located" has a particular meaning in the context of ICARA, distinct from "a traditional residency test." *Lops v. Lops*, 140 F.3d 927, 937 (11th Cir.1998). The *Lops* definition, "the place where the abducted children are discovered," is more equivalent to the concept of physical presence. 140 F.3d at 937. This kind of common-sense definition makes sense in the context of the ICARA and the Hague Convention, concerned as they are with the Hague Convention's
> consistent application across borders.

*Holder*, 305 F.3d 854, n. 5 (9th Cir. 2002) (emphasis added).

Thus, the footnote in *Holder* simply comports with a plain reading of the statute. Because the children in *Holder* were physically located in the state of Washington, a California court "probably" would not have had jurisdiction under ICARA.

The Eleventh Circuit's opinion in *Lops*, cited favorably by the Ninth Circuit in the *Holder* footnote, is consistent with this plain reading. There, petitioner and respondent Lops were married and residing in Germany. Respondent left Germany with the couple's children for the United States. In an effort to conceal his and the children's whereabouts from petitioner, respondent lived in a home purchased by his mother ("the grandmother"), and held in the original seller's name. The grandmother lived in Georgia, while respondent and the children lived just across the border in South Carolina.

Through a wiretap placed on the grandmother's telephone, officials eventually discovered that respondent and the children were living in South Carolina, and learned when the children would next be at the grandmother's home in Georgia. While on a visit to their grandmother's house in Georgia, officials took custody of the children.

Petitioner originally filed an ICARA petition in Georgia state court, because that court had issued the wiretap order. The Georgia state court found that it lacked jurisdiction and transferred the

case to a South Carolina state court. Petitioner then filed an ICARA petition in Georgia federal district court, which found that it did have jurisdiction under the statute.

The *Lops* court held that the "federal district court in Georgia properly found that it had jurisdiction over the ICARA petition because the children, *picked up from [the grandmother's] home in Georgia*, *were in Georgia* [] *at the time the petition was filed and thus were 'located' under ICARA in the same place as the district court*." *Lops*, 140 F.3d at 936-37 (emphasis added). The court then expressly held that the Georgia state court's order transferring the case to South Carolina "incorrectly applied a traditional residency test and erroneously concluded [] that the children were not 'located' in Georgia under ICARA. . ." *Id.* at 937.

It is therefore clear that the word "located," as used within the context of ICARA, has a more particular and exacting meaning than a "traditional residency test," which is generally more broad. While under a "traditional residency test" analysis the children in the instant case may have been "located" in Nevada, that is not the proper analysis here. Under ICARA, jurisdiction exists only where the children are physically present at the time of filing.

In this case, it is undisputed that respondent took the children to California on or around August 27, 2013. What is disputed, however, is the date that the children returned to Las Vegas, if at all. Petitioner has produced evidence demonstrating only that respondent was in this district on August 30, 2013. Respondent has produced evidence, including cell phone pictures and an affidavit from Ms. Acevado, tending to show that the children were in California on August 30, 2013–the day the petition was filed in Nevada. While the magistrate and petitioner have expressed doubt regarding the credibility of such evidence, no such credibility determination is necessary.

As previously noted, the burden is on the moving party to demonstrate that this court has jurisdiction. It is not enough to show generally that the children were in Nevada at some point in the weeks or days prior to the filing of the petition. Rather, jurisdiction under ICARA requires a more particular showing that the child is in the district at the moment the petition is filed. Here, petitioner has not produced *any* evidence that the *children*, as opposed to only respondent, were physically

8

present in this district at the time the petition was filed.  Accordingly, petitioner has not satisfied his burden, and respondent did not need to produce any evidence in rebuttal.

## IV.     Conclusion

The court finds that petitioner has failed to satisfy his burden of demonstrating that the children were located in this district on the date he filed the petition.  Accordingly, this court does not have jurisdiction over the matter and must dismiss the case.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that the court DECLINES TO ADOPT Magistrate Judge Koppe's report and recommendation (doc. # 54).

IT IS FURTHER ORDERED that petitioner William Gee's petition for return of children (doc. # 1) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that petitioner's motion for a warrant in lieu of habeas corpus (doc. # 2) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that respondent Hannie Hendroffe's motion to dismiss (doc. # 29) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that the case is DISMISSED for lack of subject matter jurisdiction.  The clerk shall enter judgment accordingly and close the case.

DATED: January 7, 2014.

_____
UNITED STATES DISTRICT JUDGE