1

2

3

4

5

6

7                          **UNITED STATES DISTRICT COURT**

8                               **DISTRICT OF NEVADA**

9

10   WILLIAM GEE,

11          Plaintiff,                        Case No. 13-cv-1582-JCM-NJK

12   v.                                       **ORDER**

13   HANNIE HENDROFFE, *et al.*,

14          Defendants.

15

16          Presently before the court is Magistrate Judge Nancy Koppe's report and recommendation.

17   (Doc. # 54).  The magistrate recommends the following: (1) that respondent's motion to dismiss

18   (doc. # 29) be denied; (2) petitioner's petition for return of children (doc. # 1) be granted; and (3)

19   petitioner's motion for a warrant in lieu of habeas corpus (doc. # 2) be granted.  Respondent has filed

20   timely objections to the magistrate's report and recommendation.  (Doc. # 55).

21   **I.     Background**

22          *A.     Factual*

23          William Gee ("Gee" or "petitioner") and Hannie Hendroffe ("Hendroffe" or "respondent")

24   were married in South Africa in 2002.  (Doc. # 27, at 1).  The couple have two children together,

25   "J.G." and "S.G." (hereinafter collectively referred to as "the children.").

26

1    In January 2013, the couple was divorced in Clark County, Nevada. (Doc. # 27, at 1). As

2  part of the custody agreement, the parties stipulated to move to South Africa with the children. (Doc.

3  # 32, at 17). The parties further agreed that respondent could relocate to Australia by December

4  2017, or when petitioner relocated from South Africa, whichever occurred first. (*Id.*).

5    On or around July 11, 2013, respondent left South Africa for Las Vegas, taking the children

6  with her. (Doc. # 27, at 2). She neither informed petitioner of her intention to take the children, nor

7  obtained his consent prior to her departure. Later that same day, respondent emailed petitioner

8  informing him that she was on her way to the United States, and that she planned on returning with

9  the children around August 9, 2013. (Doc. # 21, at 15).

10    Shortly after arriving in Las Vegas, respondent filed a motion in Nevada family court

11  requesting that the parties' parenting agreement be set aside and requesting permission to return to

12  the United States with the children. (Doc. # 27 at 2). Petitioner filed an opposition and

13  countermotion requesting that the children be returned to South Africa. (*Id.*). On August 14, 2013,

14  that court denied both parties' motions, finding that it did not have jurisdiction because the children

15  had been living in South Africa. (*Id.*).

16    According to respondent, on August 27, 2013, she left Las Vegas with the children and her

17  friend/babysitter, Yasmine Acevado, for southern California. (Doc. # 55). Respondent asserts that

18  she returned to Las Vegas to attend to legal matters on August 30, 2013, but left the children in

19  California with Ms. Acevado for the day. (*Id.*).

20    On August 30, 2013, Gee filed a petition in this court pursuant to the Hague Convention,

21  demanding that the children be returned to South Africa. (Doc. # 1). On August 31, 2013,

22  Hendroffe and the children left the United States for Kuala Lumpur, flying out of Los Angeles,

23  California.[1]

24

25    [1]    The petition and motion for warrant were not served until September 2, 2014. (Doc. # 11). The
       documents were delivered to Ms. Acevado's home in Las Vegas, and respondent was not aware of
26     either the motions or the hearing scheduled for September 4, 2013, until she was contacted by

1

2          *B.      Procedural* [2]

3                 After the petition and motion for warrant were filed, the magistrate promptly set a

4    hearing on the matter for September 4, 2013.  (Doc. # 10).  Although the magistrate's order required

5    respondent to be present at the hearing, respondent was never personally served with notice of such.

6    After receiving notification of the hearing from petitioner's counsel, respondent contacted the court

7    via telephone and indicated that she was no longer present in the United States.  (Doc. # 15).  In an

8    effort not to delay the hearing, the magistrate allowed respondent to appear telephonically.  *Id*.

9                 At that hearing, the magistrate *sua sponte* raised the issue of whether the court had subject

10   matter jurisdiction over this litigation, and ultimately continued the hearing to September 6, 2013.

11   (*See* doc. # 17).  The magistrate also ruled at that time that respondent could not be represented by

12   her Australian counsel, Mr. Michael Paul, in this matter because he was not admitted to practice law

13   in the United States.  *Id*.

14                At the September 6, 2013, hearing, the magistrate ordered petitioner to brief the jurisdictional

15   issue no later than September 13, 2013; respondent to respond no later than September 20, 2013; and

16   petitioner to reply no later than September 25, 2013.  (Doc. # 25). The magistrate then set an

17   evidentiary hearing concerning jurisdiction for October 8, 2013, and ordered all parties, including the

18   children, present and in person at the hearing.  *Id*.  Although respondent was already in Malaysia, she

19   indicated that she understood this requirement.  *Id*.

20                On September 23, 2013, the magistrate determined that the court had subject matter

21   jurisdiction and that a hearing on jurisdiction was no longer necessary.  (Doc. # 31).  Accordingly,

22

23   _____

                    petitioner's counsel via e-mail the day of the hearing–several days after she had already left the
24                  United States.

25     [2]        The parties do not appear to object to the magistrate's recitation of the procedural history.
                  Accordingly, the court adopts it as set forth in the report and recommendation. (*See* doc. # 54, p. 5-
26                7).

3

1   the magistrate ordered that the October 8, 2013, evidentiary hearing would instead concern the

2   petition for judicial review and motion for warrant. (*Id.*).  The magistrate further ordered that

3   petitioner, respondent, and their two children must be present, in person, at the aforementioned

4   hearing, and that there would be no exceptions to the personal appearance requirement. *Id*.

5          On September 30, 2013, respondent filed a motion to appear telephonically, indicating

6   that she was unable to appear in person and that the children were not mature enough to be

7   present in court. (Doc. # 33).  The court denied that request and again ordered petitioner,

8   respondent, and their two children to be present in person at the October 8, 2013, hearing.  (Doc. #

9   36).  Respondent further asserted that she could not afford an attorney in Nevada. (Doc. # 33).

10  Accordingly, the magistrate appointed the federal public defender's office to represent her.  (Doc. #

11  36).

12         On October 1, 2013, attorney Shari Kaufman made an appearance on behalf of respondent.

13  (Doc. # 37).  On October 3, 2013, and again on October 7, 2013, respondent's attorney filed motions

14  seeking to delay the evidentiary hearing.  (Doc. ## 42, 47).  The magistrate denied both requests.

15  (Doc. ## 46, 48).

16         On October 8, 2013, the magistrate held the evidentiary hearing as scheduled.  (Doc. # 49).

17  Present at the hearing were petitioner, petitioner's counsel, and respondent's counsel.  *Id*.

18  Respondent and the children, in violation of the magistrate's order, did not attend the hearing.  *Id*.

19         At the hearing, respondent's counsel raised the issue of whether the court had personal

20  jurisdiction over respondent and requested that the magistrate postpone the hearing until the personal

21  jurisdiction issue was resolved.  *Id*.  The magistrate instructed the parties that they could submit

22  briefing on the personal jurisdiction issue no later than October 18, 2013, and that

23  the hearing would continue as scheduled.  *Id*.

24         Petitioner's counsel then called the petitioner to testify under oath.  *Id*.  Petitioner was asked

25  questions by his counsel, then respondent's counsel cross-examined him and, finally, the magistrate

26  asked petitioner questions of her own.  *Id*.  No other witnesses were presented.  *Id*.

4

1   At the close of the hearing, petitioner's counsel requested that the court freeze all of respondent's

2   assets in the United States and, additionally, issue a warrant for her arrest. *Id*. The magistrate

3   instructed respondent's counsel that he could file briefing for that request. *Id*. The parties made their

4   closing arguments and the court took the matter under submission. *Id*.

5         On October 9, 2013, petitioner filed a memorandum requesting that the court freeze all of

6   respondent's assets in the United States and, additionally, issue a warrant for her arrest. (Doc. # 50).

7   The magistrate issued a minute order instructing petitioner that the request was not

8   submitted in the proper form and did not apply the appropriate standards. (Doc. # 51). Petitioner did

9   not resubmit his request.

10        On October 29, 2013, the magistrate issued a report recommending the petition be granted, a

11  warrant in lieu of habeas corpus be issued, and respondent's motion to dismiss be denied. (Doc. #

12  54). Respondent filed objections to the report and recommendation, specifically objecting to the

13  magistrate's findings that the court has personal and subject matter jurisdiction. (Doc. # 55).

14  Petitioner did not file a response.

15  **II.    Legal Standard**

16        The court "may accept, reject, or modify, in whole or in part, the findings or

17  recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). Where a party timely objects to a

18  magistrate judge's report and recommendation, then the court is required to "make a de novo

19  determination of those portions of the [report and recommendation] to which objection is made." 28

20  U.S.C. § 636(b)(1). Because respondent has timely objected to all of the magistrate's findings, the

21  court conducts a de novo review of the entire report.

22  **III.   Discussion**

23        The threshold issue is whether the court has subject matter jurisdiction over this matter under

24  the Hague Convention. "The Hague Convention is a multilateral international treaty on parental

25  kidnapping." *Holder v. Holder*, 305 F.3d 854, 859 (9th Cir.2002). The convention was adopted in

26  1980 "to protect children internationally from the harmful effects of their wrongful removal or

1   retention and to establish procedures to ensure their prompt return to the State of their habitual

2   residence." (*See* Hague Convention, preamble).  The International Child Abduction Remedies Act

3   ("ICARA"), which implements the convention in the United States, provides that state courts and

4   United States district courts have concurrent original jurisdiction over actions arising under the

5   convention.  *See* 42 U.S.C. § 11603(a).

6          Any person seeking the return of a child in the United States may commence a civil action

7   under the convention by "filing a petition in . . . any court which has jurisdiction of such action and

8   which is authorized to exercise its jurisdiction *in the place where the child is located at the time the*

9   *petition is filed*."  42 U.S.C. § 11603(b) (emphasis added).

10          In any judicial proceeding, the burden of proving jurisdiction rests upon the party asserting it.

11   Here, petitioner is required to demonstrate that this court has jurisdiction by proving the children

12   were located in this district at the time he filed the petition.  He has failed to do so.

13          The parties' disagreement regarding subject matter jurisdiction centers around the word

14   "located" as it is used within the context of an ICARA petition.  Relying on a footnote in *Holder*, the

15   petitioner argues that the place where the children are discovered, apparently whether or not they are

16   physically there when the petition is filed, is the determinative location.  Because the children were

17   "discovered" in Las Vegas, petitioner asserts that this court has jurisdiction.

18          In finding that the court does have subject matter jurisdiction, the magistrate concluded that

19   respondent's contention that the children were in California with Ms. Acevado when the petition was

20   filed was irrelevant because petitioner did not have knowledge of that trip, and his reasonable belief

21   that the children were in Las Vegas was enough to establish jurisdiction.  (Doc. # 54 at 8).  Neither

22   the plain language of the statute nor the decisions relied on by petitioner support that conclusion.

23          In *Holder*, the petitioner and respondent had gotten married in California and were living in

24   Germany.  Respondent left Germany with the couple's children and moved to the state of

25   Washington.  Although the holding in that case was primarily focused on *res judicata*, the court

26   touched on the meaning of the word "located" in passing.  In doing so, the court stated that:

6

1

2

3

4

5

6

7

> [Petitioner] probably *could not have* brought his Hague Convention petition in California in the first instance because California probably *does not have jurisdiction to hear it* . . . At least one of our sister circuits has held that "located" has a particular meaning in the context of ICARA, distinct from "a traditional residency test." *Lops v. Lops*, 140 F.3d 927, 937 (11th Cir.1998).  The *Lops* definition, "the place where the abducted children are discovered," is more equivalent to the concept of physical presence.  140 F.3d at 937. This kind of common-sense definition makes sense in the context of the ICARA and the Hague Convention, concerned as they are with the Hague Convention's consistent application across borders.

8

9

*Holder*, 305 F.3d 854, n. 5 (9th Cir. 2002) (emphasis added).

10

Thus, the footnote in *Holder* simply comports with a plain reading of the statute.  Because the

11

children in *Holder* were physically located in the state of Washington, a California court "probably"

12

would not have had jurisdiction under ICARA.

13

The Eleventh Circuit's opinion in *Lops*, cited favorably by the Ninth Circuit in the *Holder*

14

footnote, is consistent with this plain reading.  There, petitioner and respondent Lops were married

15

and residing in Germany.  Respondent left Germany with the couple's children for the United States.

16

In an effort to conceal his and the children's whereabouts from petitioner, respondent lived in a home

17

purchased by his mother ("the grandmother"), and held in the original seller's name.  The

18

grandmother lived in Georgia, while respondent and the children lived just across the border in South

19

Carolina.

20

Through a wiretap placed on the grandmother's telephone, officials eventually discovered

21

that respondent and the children were living in South Carolina, and learned when the children would

22

next be at the grandmother's home in Georgia.  While on a visit to their grandmother's house in

23

Georgia, officials took custody of the children.

24

Petitioner originally filed an ICARA petition in Georgia state court, because that court had

25

issued the wiretap order.  The Georgia state court found that it lacked jurisdiction and transferred the

26

7

1   case to a South Carolina state court.  Petitioner then filed an ICARA petition in Georgia federal

2   district court, which found that it did have jurisdiction under the statute.

3          The *Lops* court held that the "federal district court in Georgia properly found that it had

4   jurisdiction over the ICARA petition because the children, *picked up from [the grandmother's] home*

5   *in Georgia, were in Georgia* [] *at the time the petition was filed and thus were 'located' under*

6   *ICARA in the same place as the district court*."  *Lops*, 140 F.3d at 936-37 (emphasis added).  The

7   court then expressly held that the Georgia state court's order transferring the case to South Carolina

8   "incorrectly applied a traditional residency test and erroneously concluded [] that the children were

9   not 'located' in Georgia under ICARA. . ."  *Id.* at 937.

10         It is therefore clear that the word "located," as used within the context of ICARA, has a more

11  particular and exacting meaning than a "traditional residency test," which is generally more broad.

12  While under a "traditional residency test" analysis the children in the instant case may have been

13  "located" in Nevada, that is not the proper analysis here.  Under ICARA, jurisdiction exists only

14  where the children are physically present at the time of filing.

15         In this case, it is undisputed that respondent took the children to California on or around

16  August 27, 2013.  What is disputed, however, is the date that the children returned to Las Vegas, if at

17  all.  Petitioner has produced evidence demonstrating only that respondent was in this district on

18  August 30, 2013.  Respondent has produced evidence, including cell phone pictures and an affidavit

19  from Ms. Acevado, tending to show that the children were in California on August 30, 2013–the day

20  the petition was filed in Nevada.  While the magistrate and petitioner have expressed doubt regarding

21  the credibility of such evidence, no such credibility determination is necessary.

22         As previously noted, the burden is on the moving party to demonstrate that this court has

23  jurisdiction.  It is not enough to show generally that the children were in Nevada at some point in the

24  weeks or days prior to the filing of the petition.  Rather, jurisdiction under ICARA requires a more

25  particular showing that the child is in the district at the moment the petition is filed.  Here, petitioner

26  has not produced *any* evidence that the *children*, as opposed to only respondent, were physically

8

1  present in this district at the time the petition was filed.  Accordingly, petitioner has not satisfied his

2  burden, and respondent did not need to produce any evidence in rebuttal.

3  **IV.      Conclusion**

4       The court finds that petitioner has failed to satisfy his burden of demonstrating that the

5  children were located in this district on the date he filed the petition.  Accordingly, this court does

6  not have jurisdiction over the matter and must dismiss the case.

7  Accordingly,

8       IT IS HEREBY ORDERED, ADJUDGED, and DECREED that the court DECLINES TO

9  ADOPT Magistrate Judge Koppe's report and recommendation (doc. # 54).

10      IT IS FURTHER ORDERED that petitioner William Gee's petition for return of children

11  (doc. # 1) be, and the same hereby is, DENIED.

12      IT IS FURTHER ORDERED that petitioner's motion for a warrant in lieu of habeas corpus

13  (doc. # 2) be, and the same hereby is, DENIED.

14      IT IS FURTHER ORDERED that respondent Hannie Hendroffe's motion to dismiss (doc. #

15  29) be, and the same hereby is, DENIED.

16      IT IS FURTHER ORDERED that the case is DISMISSED for lack of subject matter

17  jurisdiction.  The clerk shall enter judgment accordingly and close the case.

18      DATED: January 7, 2014.

19

20  _____
    UNITED STATES DISTRICT JUDGE

21

22

23

24

25

26

9